No. 23-15213

————————————————————

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————————————————

**TWINROCK HOLDINGS, LLC,**
*Plaintiff - Appellant,*

*v.*

**CITIMORTGAGE, INC**.
*Defendant - Appellee,*

**BRECKENRIDGE PROPERTY FUND 2016, LLC**
*Defendant - Appellee,*

**NATIONAL DEFAULT SERVICING CORPORATION,**
*Defendant - Appellee.*

————————————————————

On Appeal from the United States District Court
District of Nevada
Before the Honorable Jennifer A. Dorsey, Judge
[District Court No. 2:22-cv-00143-JAD-VCF

————————————————————

**APPELLANT'S OPENING BRIEF**

————————————————————

JOHN HENRY WRIGHT, ESQ.
Nevada Bar No. 6182
The Wright Law Group, P.C.
2340 Paseo Del Prado, Suite D-305
Las Vegas, Nevada 89102
Telephone: (702) 405-0001

*Attorneys for Appellant*
*Twinrock Holdings, LLC*

## FRAP 28 DISCLOSURE

The undersigned counsel of record certifies that the following are persons and/or entities as described in FRAP 28 and 9th Circuit Rule 28-1 and must be disclosed. The representations are made in order that the justices of this court may evaluate possible disqualifications or recusals.

1.    Attorney John Henry Wright, Esq., and Appellant TWINROCK HOLDINGS, LLC ("Twinrock") is a Utah Limited Liability Corporation. I certify that there are no publicly held companies owning 10% or more stock or other interest in TWINROCK HOLDINGS, LLC.

2.    The undersigned counsel is the only counsel expected to appear in this Court;

3.    The Appellant is not using a pseudonym.

DATED this 17th day of May, 2023.

Respectfully submitted by:
**THE WRIGHT LAW GROUP, P.C.**

/s/ *John H. Wright, Esq.*
JOHN HENRY WRIGHT, ESQ.
Nevada Bar No. 6182
2340 Paseo Del Prado, Suite D-305
Las Vegas, Nevada   89102

*Attorney for Appellant*
*Twinrock Holdings, LLC.*

ii

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v, vi, vii

I. STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Basis for District Court Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Basis for Court of Appeals' Jurisdiction . . . . . . . . . . . . . . . . . . . . . 1

II. ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Summary of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Facts and Procedural History Relevant to the Issues
          Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.    Rulings Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV. SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.    CITI's Deed of Trust is Terminated Pursuant to
          NRS § 106.240 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    B.    Discharge in Bankruptcy Results in the Debt Becoming
          Wholly Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    C.    By Proceeding with the Foreclosure Sale and Collecting Interest in
          Violation of 11. U.S.C. 502(b) CITI was Unjustly Enriched to the
          Damage of Twinrock . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    D.    Twin Rock Is A Bona Fide Purchaser . . . . . . . . . . . . . . . . . . . . . . . 33

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38

       STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

       CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

       CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

# TABLE OF AUTHORITIES

**CASES:**

*Coleman Oil Co. v. Circle K Corp.*,
127 F.3d 904 910 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Committee of Creditors Holding Unsecured Claims v. Koch Oil Co.*,
(*In re Powering Oil Co.* ), 59 F.3d 969, 973 (9th Cir. 1995) . . . . . . . . . . . . . 19, 25

*Cox v. Eighth Judicial District Court*,
124, Nev. Adv. Op. 78 (October 2, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Estate of Spahi v. Hughes-Northwest, Inc.*,
107 Wn. App. 763 (Wash. Ct. App. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

*HSBC Bank USA v. Calpine Corporation*,
2010 U.S. Dist. LEXIS 96792; 2010 WL 3835299 (Sept. 15, 2010) . . . . 17, 18, 25

*In re Manville Forest Prods. Corp.*,
43 B.R. 293, 297-298 (Bankr. S.D.N.Y. 1984), aff'd in part, rev'd in part, 60 B.R.
403 (S.D.N.Y. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *en passim*

*In re Pease*,
195 B.R. 431, 434 (Bankr. D. Neb. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 25

*In re Skyler Ridge*, 80 B.R. 500;
1987 Bankr. LEXIS 1935 (Dec. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 25

*Jarvis v. Federal National Mortgage Association*,
Case No. 17-35428 (June 14, 2018) (Unpublished) . . . . . . . . . . . . . . . . . *en passim*

*Lakes v. U.S. Bank Trust*,
137 Nev. Adv. Rep. 85 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Silvernagel v. U.S. Bank Nat'l Ass'n*,
Case No. 20CA1035 (October 21, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*,
138 Nev. Adv. Op. 22 (April 22, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Shadow Wood Homeowner's Association, Inc. v. New York Community Bancorp, Inc.*, 366 P.3d 1105 (Nev. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Wright v. Union Cent. Life Ins. Co.*,
304 U.S. 502, 517, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**STATUTES:**

NRS § 106.240 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *en passim*

NRS § 116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

NRS § 116.3116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

NRS § 40.462(2)(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**COURT RULES:**

FRAP Rule 25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

FRAP Rule 28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**OTHER:**

11 U.S.C. § 502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 29

11 U.S.C. § 502(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

12 U.S.C. § 4617(j)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## I.    STATEMENT OF JURISDICTION

### A.    Basis for Ninth Circuit Court Jurisdiction:

The underlying civil case originated with the filing of a Complaint by Twinrock in the Eighth Judicial District Court (the "State Court"). The case was removed to the Federal District Court for Nevada by CITIMORTGAGE, INC. ("CITI"), on the basis of complete diversity of citizenship between Twinrock and CITI and the amount in controversy exceeding $75,000.00. CITI is a New York Corporation. Twinrock is a Utah Limited Liability Corporation. The subject property is situated in Clark County, Nevada.

### B.    Basis for Court of Appeals' Jurisdiction:

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final order of a District Court. The District Court filed its final order on January 26, 2023, an entry of judgment was filed on January 27, 2023 and the Notice of Appeal was timely filed on February 15, 2023.

## II.    ISSUE PRESENTED FOR REVIEW

This case presents the question of whether NRS § 106.240 deems a Deed of Trust to be terminated ten (10) years after the debt secured by the Note has been accelerated by the filing of a petition for bankruptcy by the borrower and subsequent discharge by the Bankruptcy Court on July 6, 2010.

## III. STATEMENT OF THE CASE

### A. Summary of the Case:

This is a case involving the effect of a debtor's discharge in bankruptcy to the application of NRS § 106.240, a statue of repose, which deems a Deed of Trust to be terminated (10) years after the debt secured by the Note is "wholly due" or, as Appellant argues, has been accelerated and became wholly due pursuant to Federal Bankruptcy law.

### B. Facts and Procedural History Relevant to the Issues Presented for Review:

This case involves a dispute regarding the validity of a Deed of Trust under which defendants CITIMORTGAGE, INC's ("CITI") and NATIONAL DEFAULT SERVICING CORPORATION ("NATIONAL") have now foreclosed against the real property owned by TWINROCK. The property is commonly known as **7313 Hospitality Place, Las Vegas, NV 89131, APN # 125-16-416-030** (the "Property") and was the subject of an HOA foreclosure, pursuant to NRS 116, in 2013 that resulted in six years of litigation in the Eighth Judicial District Court, Clark County, Nevada ("State Court"), which was followed by another year and a half in the Nevada Supreme Court. TWINROCK is the third owner of the Property since the HOA foreclosure.

The prior owners, Wayne and Debra Berwick (collectively, "Berwick") acquired title to the Property in May 2004 via a Grant Bargain Sale Deed recorded in the office of the Clark County Recorder as Instrument No. 20040514:0003181. ( 3-ER-0244-46). The Property is located in a neighbourhood governed by CC&R's of the Elkhorn Community Association (the "HOA") and is subject to monthly assessments.

Approximately two (2) years later, Berwick executed a Deed of Trust which was recorded in the Official Records of the Clark County Recorder on March 20, 2006 as instrument 20060320:0002449. (2- ER-0038-53). The Deed of Trust was security for a Note in favor of Home Loan Center, Inc., dba Lending Tree Loans in the amount of $180,000.00.[1]

Berwick defaulted on the loan payments under the Note in August 2009. Berwick also stopped paying the monthly HOA assessments. Therefore, on or about January 20, 2010, the HOA recorded a Notice of Default and Election to Sell Under Notice of Delinquent Assessment Lien with the office of the Clark County Recorder as Instrument No. 20100120:0002839. (3-ER-0184-85).

---

[1]Neither the Notice of Default, nor the Notice of Sale are accompanied by a copy of the Note.

On March 24, 2010, Berwick filed a petition for Chapter 7 Bankruptcy under case number 10-14965-mkn, at which time Berwick stated their intention to surrender the Property. On July 6, 2010, the bankruptcy court entered an Order Discharging Debtors. (3- ER-0187-88). At the time of filing the petition the amount owed under CITI's Deed of Trust was claimed to be $173,246.00. Berwick neither reaffirmed the debt secured by the Deed of Trust, nor did they make any further payments.

On or about October 27, 2010, Cal-Western Reconveyance Corporation recorded a Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust, as Instrument No. 20101027:0003861, alleging that the above-mentioned Deed of Trust recorded on March 20, 2006, was in default and therein declared:

> That by reason thereof, the below set out beneficiary under such Deed of Trust, has executed and delivered to the Trustee, a written Declaration of Default and Demand for Sale, and has deposited with said Trustee such Deed of Trust and all document evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

(Emphasis added). Thus indicating that the debt had been previously accelerated by Home Loan Center, Inc., dba Lending Tree Loans., or MERS, the then beneficiary of record. (3-ER-0190-91).

On or about December 16, 2010 the Deed of Trust was transferred to defendant CITI pursuant to an Assignment of Deed of Trust recorded in the office of the Clark County Recorder as Instrument No. 20101216:0000294. (3-ER-0196). No further action was taken by CITI to continue with the foreclosure of the Deed of Trust.

On October 18, 2012, the HOA recorded a Notice of Foreclosure Sale in the office of the Clark County Recorder as Instrument No. 20121018:0001773. (3-ER-0193-94). Thereafter, the Property was acquired by Premiere One Holdings, Inc. on November 13, 2012, by successfully bidding on the Property at a publicly-held foreclosure auction in accordance with NRS § 116.3116, *et. seq.,* and by paying the sum of $4,100.00. A Trustee's Deed Upon Sale was recorded in the office of the Clark County Recorder as Instrument No. 20121119:0002852. (3-ER-0198-200).

On January 30, 2013, Premiere One Holdings, Inc., filed a Complaint in the State Court seeking Quiet Title to the Property, to which CITI responded by filing a Counterclaim asserting that the HOA foreclosure did not extinguish the Deed of Trust. After several years of litigation and a hearing on the parties' respective motions for summary judgment, the State Court issued its Findings of Fact and Conclusions of Law and entered Judgment Quieting Title to the Property in favor of Premiere One on September 24, 2018. The Findings of Fact, Conclusions of Law and Judgment were recorded in the office of the Clark County Recorder as Instrument No.

20181106:0002793. (3-ER-0284-91).  On October 24, 2018, CITI filed a Notice of Appeal.  However, CITI did not seek a stay of the judgment or post a supersedes bond.

On September 6, 2018,while the above-mentioned motions for summary judgment were pending, the Property was transferred to Golden Creek Holdings via a Quit Claim Deed recorded in the office of the Clark County Recorder as Instrument No. 20180906:0002119. (3-ER-0293-95).  The Property was subsequently transferred to TWINROCK on November 15, 2018, via a Quit Claim Deed recorded in the office of the Clark County Recorded as Instrument No. 20181115:0002547. (3-ER-0297-99).

Approximately eighteen (18) months later, on April 28, 2020, the Nevada Supreme Court issued an Order vacating the State Court's Judgment declaring that, because the loan secured by the Deed of Trust was held by Freddie Mac, and that pursuant to 12 U.S.C. § 4716(j)(3), the Deed of Trust was not extinguished by the HOA foreclosure in 2012. (3-ER-0301-05).  Based on the remand by the Nevada Supreme Court, the State Court entered a final judgment on November 18, 2020, declaring that the Property was sold at the HOA foreclosure sale subject to the Deed of Trust held by CITI.

In the interim, on October 22, 2020, CITI caused to be recorded a Notice of Rescission of Notice of Breach and Default and Election to Sell to Cause Sale of Real Property Under Deed of Trust. (3-ER-0181-82). This Notice purports to rescind the Notice of Default that was recorded on October 27, 2010, while acknowledging two things: First, CITI acknowledges that the debt owed by Berwick was discharged back on July 6, 2010, when the U.S. Bankruptcy Court issued its Order of Discharge. Second, the Notice also acknowledges that the debt had previously been accelerated by CITI's predecessor prior to the Berwick bankruptcy as a result of Berwick failing to make the August 1, 2009 payment and all subsequent payments. The Notice states in bolded and underlined words:

> **PLEASE NOTE THIS IS NOT AN ATTEMPT TO COLLECT A DEBT, WAYNE AND DEBRA BERWICK'S BANKRUPTCY DISCHARGED THEM OF ANY PERSONAL LIABILITY ON THE LOAN secured by the above-referenced deed of trust. The purpose of this document is to decelerate the subject loan until such time as the deed of trust beneficiary or its successors or assigns MAY ELECT to foreclose pursuant to the deed of trust**.

Approximately one year later, on or about September 9, 2021, CITI, through its Trustee, NATIONAL, caused a Notice of Default and Election to Sell Under Deed of Trust to be recorded as Instrument No. 20210909:0001557. (3-ER-0310-21). Despite that the entire debt secured by the Deed of Trust was discharged on July 6, 2009 and no further payments could become due, this Notice of Default states:

7

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

The installments of principal and interest which became due on 08/01/2009 and all subsequent installments of principal and interest through the date of this Notice. . .

CITI served a Notice of Trustee's Sale in the office of the Clark County Recorder as Instrument No. 20211210-0002336, setting a foreclosure sale for January 19, 2022, at the front steps of the Nevada Legal News. The Notice of Trustee's Sale states that the total amount of the unpaid balance of the obligation secured by the property is $365,118.62, which includes accrued interest through the date of the Notice of Trustee's Sale. (3-ER-0323-25).

TWINROCK filed its Complaint in the Eighth Judicial District Court of Clark County, Nevada on January 11, 2022. Upon filing its Complaint, TWINROCK filed and recorded a lis pendens as Instrument No. 20220118:00712.

TWINROCK also moved for a Temporary Restraining Order and Preliminary Injunction since the contemplated sale was scheduled for January 19, 2022. The State Court granted TWINROCK's request for a Temporary Restraining Order on January 13, 2022 and directed TWINROCK to post a bond in the amount of $1,000, which TWINROCK posted on January 14, 2022, and the Court scheduled a hearing on the Motion for Preliminary Injunction for January 27, 2022, at 9:30 a.m.

After the issuance of the Temporary Restraining Order and one day before the hearing on TWINROCK's motion for Preliminary Injunction, CITI removed the case from State Court to the Federal District Court on January 26, 2022.

Upon removal from State Court, on February 4, 2022, CITI immediately filed a Motion to Dismiss TWINROCK's Complaint. CITI and NATIONAL immediately scheduled the foreclosure sale for March 4, 2022.

On February 22, 2022, TWINROCK, sought an order granting TWINROCK a Preliminary Injunction in order to prevent CITI and NATIONAL from foreclosing on the Property on March 4, 2022 and anytime thereafter while this litigation is pending.

On March 3, 2022, the Federal District Court denied TWINROCK's motion for preliminary injunction and allowed CITI and its co-defendant NATIONAL to proceed with the foreclosure of CITI's Deed of Trust and sell TWINROCK's Property.

CITI and NATIONAL conducted a non-judicial foreclosure sale on March 4, 2022, selling TWINROCK's Property to Breckenridge Property Fund 2016, LLC ("BRECKENRIDGE") for the amount of $369,000.00. The sales amount of $369,000.00 was $192,754.00 in excess of the amount CITI was legally entitled to collect. On September 11, 2015, TWINROCK filed an Amended Complaint. (ECF

No. 14), which asserts causes of action for: 1)Wrongful Foreclosure- Violations of NRS 107, Against CITI and NATIONAL; 2)Wrongful Foreclosure/Chain of Title, Against CITI and NATIONAL; 3) Wrongful Foreclosure-Lack of Unity, Against CITI and NATIONAL; 4) Wrongful Foreclosure on Non-Existing Debt - Against CITI and NATIONAL; 5) Quiet Title - Against BRECKENRIDGE and CITI; 6) Unjust Enrichment, against CITI - Pleaded in the Alternative; and, 7) Civil Conspiracy- Against CITI and NATIONAL.

CITI filed a motion to dismiss the Amended Complaint on May 31, 2022 (3-ER-0217-42).

Twinrock filed an Opposition to CITI's Motion to Dismiss on June 14, 2022. (2-ER-0094-116) and also filed a Motion for Summary Judgment on May 25, 2022 (3-ER-0330-47), arguing that the foreclosure sale was wrongful and void because the Deed of Trust upon which the sale was based had been terminated, as a matter of law, ten (10) years after the Berwick discharge.

The District Court ruled in favor of CITI and a final judgment was entered on January 27, 2023. (1-ER-0002-12).

Twinrock timely filed its Notice of Appeal on February 15, 2023. (6-ER-1052-55).

### C.    Rulings Presented for Review:

Twinrock appeals from the District Court's Order of January 26, 2023 (1-ER-0002-12) and the dispositions of the parties' respective motions.

## IV.    SUMMARY OF THE ARGUMENT

NRS § 106.240 is a Statute of Repose that causes the termination of a Deed of Trust ten years after the underlying debt becomes wholly due. The question presented for this Court to resolve is whether the Berwicks' bankruptcy caused the debt secured by the Deed of Trust become wholly due. This is a legal issue that was wrongly decided by the District Court.

NRS § 106.240 provides:

> The lien heretofore or hereafter created of **any** mortgage or **deed of trust** upon any real property, appearing of record, and not otherwise satisfied and discharged of record, ***shall at the expiration of 10 years*** **after the debt** secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof **become wholly due**, ***terminate***, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged. (Emphasis added)

Here, the borrowers under the Note and Deed of Trust at issue, the Berwicks, entered into a 30 year installment loan, but filed bankruptcy in 2010. By virtue of the bankruptcy and operation of law, the underlying debt was accelerated and the maturity date advanced, making same wholly due on or before July 6, 2010. More

than 10 years passed since that acceleration. By passage of time and operation of NRS § 106.240, the Deed of Trust was terminated.   Therefore, the Deed of Trust that was foreclosed upon by CITI on March 4, 2022, was no longer valid and any foreclosure sale was wrongful and void *ab initio*.

Twin Rock is a Good Faith Purchaser, having purchased a property that was not subject to CITI's Deed of Trust at the time of purchase.  It is undisputed that at the time Twin Rock purchased the property, November 15, 2018, the State Court had entered a Judgment expressly stating that the Deed of Trust and any assignments thereof, as liens on the Subject Property,  were cancelled and without legal force or effect.  The previous appeal of the State Court  judgment to the Nevada Supreme Court in no way invalidated or effected the Judgment.  To protect its interest, CITI was required to request a stay of the order/judgment and post a supercedes bond. CITI chose not to effectuate a stay of the order/judgment of September 24, 2018 pending its appeal to the Nevada Supreme Court.

It was absolutely fatal to CITI to fail to seek a stay of the State Court's order/judgment of September 24, 2018 pending appeal.  The subsequent judgment was only to Premier One Holdings and had no effect whatsoever on Twinrock, having purchased the subject property on November 15, 2018 as a Good Faith Purchaser.

## V.   ARGUMENT

### A.   CITI's Deed of Trust is Terminated Pursuant to NRS § 106.240:

Pursuant to NRS § 106.240, a lien created of any mortgage or deed of trust upon any real property appearing of record, terminates at the expiration of 10 years after the debt secured by the mortgage becomes wholly due.

TWINROCK does not argue that the Deed of Trust became unenforceable because of discharge in bankruptcy.  That is a straw argument never presented by TWINROCK.  Rather, under NRS § 106.240, the Deed of Trust is only enforceable for a period of ten years after the underlying debt becomes wholly due, afterwards it is ***terminated***.

CITI has argued that the debt can only be deemed wholly due by some action taken by the bank to accelerate, or based on the maturity date set forth in the terms of the Deed of Trust or the Note.  However, this argument is misplaced.  It is a basic tenet of the Bankruptcy law that, regardless of the terms of the instrument or acts of the lender, bankruptcy operates as the acceleration of the principal amount of all claims against the debtor.  This was explained in 1984, at length, by the Federal Bankruptcy Court in *In re Manville Forest Prods. Corp.*, 43 B.R. 293, 297-298 (Bankr. S.D.N.Y. 1984), aff'd in part, rev'd in part, 60 B.R. 403 (S.D.N.Y. 1986), wherein the Court stated:

*1.    Acceleration of Debt*

MFPC's first contention is that in order to accelerate the entire debt due under the loans, the long-term lenders were required to notify MFPC of their intent to accelerate the debt, as required by the terms of the various contracts.[2]   Their failure to do so, alleges MFPC, precludes the lenders from asserting their claims for interest on the accelerated debt.   The long-term lenders, on the other hand, take the position that the debts due under the various long-term agreements in question were automatically accelerated at the time of the filing of the petition by operation of Section 502(a) of the Code, irrespective of any contractual clause requiring notice.

This Court agrees with the long-term lenders that the debt due them was automatically accelerated by the filing of the bankruptcy petition.   It is a basic tenet of the bankruptcy Code that "bankruptcy operates as the acceleration of the principal amount of all claims against the debtor."   *In re Tonyan Construction Company, Inc.*, 28 B.R. 714 (Bankr. N.D. Ill. 1983); *In re Princess Baking Corporatoin*, 5. B.R. 587, 590 (Bankr. S.D. Ca. 1980).  See also *In re John-Manville Corp.*, 36 B.R. 727, 740 (Bankr. S.D.N.Y. 1984) *Guarantee Trust Co. Of New York v. Henwood*, 86 F.2d 347, 351 (8th Cir. 1936). This tenet follows logically from the expansive Code definition of "claim", which allows any claim to be asserted against the debtor, regardless of whether such claim is "reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed [or] undisputed . . . ." 11 U.S.C. 101(4)(A), and from the Code's provision in Section 502 that a claim will be allowed in bankruptcy regardless of its contingent or unmatured status. . .

\*    \*    \*

_____

[2]Respondents make the same argument here.

14

Therefore, in the case at bar it was unnecessary, and indeed would have violated the stay, for the long-term lenders to take overt steps to accelerate the debt without first seeking a modification of the stay from this Court. **The debt was automatically accelerated upon the filing of the petition** by virtue of sections 101(4)(A) and 502 of the Code. (Emphasis added)

*(*43 B.R. 293, 297-298)

*In re Manville* was followed in 1987 by the California case of *In re Skyler Ridge*, 80 B.R. 500; 1987 Bankr. LEXIS 1935 (Dec. 1987), wherein the United States Bankruptcy Court reiterated the well established understanding that the filing of a bankruptcy petition accelerates the debt. In *Skyler Ridge*, the Court cited to the legislative history in the congressional record, [3] as well as *Manville*, stating:

The automatic acceleration of a debt upon the filing of a bankruptcy case is well established *See, e.g., Manville Forest Products*, 43 Bankr. at 297; H.R. No. 95-595, 95 Cong., 1st Sess. 353 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6309; Sen. Rep. No 95-989, 95th Cong., 2d Sess. 63 (1978), reprinted in U.S. code Cong. & Admin. News 5787, 5849. In fact, it is this automatic acceleration that prevents Travelers from enforcing its "lock-in" clause.

---

[3]The legislative history shows that § 502(b) and (b)(2) reflect the basic bankruptcy law tenet that "bankruptcy operates as the acceleration of the principal amount of all claims against the debtor." H.R. Rep. No. 95-595, at 352-54. "Simply stated, the filing of a petition accelerates the principal amount of all unmatured claims against the debtor, whether or not a clause in a prepetition agreement provides that a bankruptcy filing accelerates the maturity date." 4-5 Collier on Bankruptcy P502.03

This acceleration is subject to deceleration in a plan under Chapter 11 or Chapter 13 of the bankruptcy code. *See, e.g., Manville Forest Products*, 43 Bankr. at 298 (Chapter 11); *Di Pierro v. Taddeo (In re Taddeo)*' 685 F.2d 24, 26-29 (2d Cir. 1982) (Chapter 13).[4]

CITI has argued that the debt cannot become wholly due earlier than the originally contemplated, and now, irrelevant and inaccurate, maturity date contained in the Note. But this ignores the fact that **the bankruptcy changed the Note's maturity date**[5][6][7] and the same argument CITI raised has been examined and rejected

---

[4]While the *Skyler Ridge* Court stated that the acceleration is subject to deceleration under Chapter 11 or Chapter 13, there is no such provision in the bankruptcy code under a Chapter 7. This is because in a Chapter 7, such as in this case, there is no plan under which repayment of the debt could occur.

[5]The Bankruptcy Code substantively alters the rights and remedies of both debtors and creditors in a most fundamental way. *In re Skyler Ridge*, 80 B.R. 500; 1987 Bankr. LEXIS 1935 (Dec. 1987).

[6]The United States Supreme Court in *Von Hoffman v. City of Quincy*, 71 U.S. 535 (1866), explained, " it is also settled that the law which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, **as if they were expressly** ... **incorporated in its terms**. This principle embraces alike those which affect its validity, construction, discharge, and enforcement." *Id.* at 550, see also *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 189 (1902) (holding that "all contracts were made with reference to existing [bankruptcy] laws.").

[7]David S. Kupitz, *The Bankruptcy Code is an Implicit Part of Every Contract: Minimizing the Impact of Chapter 11 on the Non-Debtor's Bargain*. The Business Lawyer, Volume 54 (November 1998); citing *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 435 (1934); and *Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502, 516, 518 (1938) ("The mortgage contract was made subject to

before.  In *HSBC Bank USA v. Calpine Corporation*, 2010 U.S. Dist. LEXIS 96792; 2010 WL 3835299 (Sept. 15, 2010), the District Court for the Southern District of New York addressed this issue as follows:

> Trustee argues that ordinary principles of contract law apply to its claim for expectation damages.  The argument misses the mark. According to the terms of the notes, a voluntary bankruptcy filing constitutes an event of default that accelerates and matures the notes, thus making them due and payable immediately.  **Even without these provisions, the Bankruptcy Code would require the same result, as the filing of a bankruptcy petition renders all of the petitioner's outstanding debts mature and payable**. *See, e.g., In re Granite Broad. Corp.*, 369 B.R. 120, 144 (Bankr. S.D.N.Y. 2007); *In re Ridgewood Apartments of DeKalb County. Ltd.*, 174 B.R. 712, 720 (Bankr. S.d. Ohio 1994) ("Even without specific contractual language, a bankruptcy filing acts as an acceleration of all of a debtor's obligations.")  . . .
>
> \*   \*   \*
>
> . . . Debtor's repayment of the notes also did not occur prior to maturity, because **accelerated debts are mature**.  *See In re LHD Realty Corp.*, 726 F.2d 327, 330-31 (7th Cir. 1984) (stating that "acceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity"); *In re Ridgwood Apartments*, 174 B.R. at 720 (It would be anomalous for acceleration of an obligation to be construed as prepayment. . . . Even without specific contractual language, a bankruptcy filing acts as an acceleration of all a debtor's obligations."); *Northwestern Mut. Life Ins. Co.*, 11

---

constitutional power in the Congress to legislate on the subject of bankruptcies. Impliedly, this was written into the contract. . . . [I]f Congress is acting within its bankruptcy power, it may authorize the bankruptcy court to affect . . . property rights, provided the limitations of the due process clause are observed.")

Misc.3d at 982-83, 816 N.Y.S.2d 831 (collecting cases and stating that **"[a]cceleration is a change in the date of maturity from the future to the present**. Once the maturity date is accelerated to the present, it is no longer possible to repay the debt before maturity.")

(*HSBC Bank USA v. Calpine Corporation*, 2010 U.S. Dist. LEXIS 96792; 2010 WL 3835299 at 9 -14) (Emphasis added). Thus, there is no distinguishing acceleration from maturity. The result is the same and the debt is "wholly due" regardless of the terms of the note or the deed of trust.

Even if the terms of the Deed of Trust or the Note address acceleration, upon commencement of a bankruptcy case the implicit provisions of the contract embodying the Code are activated, and the Code may interfere with and override the ordinary exercises of contractual rights. *Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502, 517, ("Bankruptcy proceedings constantly modify and affect the property rights established by state law"); *Coleman Oil Co. v. Circle K Corp.*, 127 F.3d 904 910 (9th Cir. 1997) (Explaining that "all kinds of interferences with contractual rights occur in bankruptcy proceedings").

One bankruptcy court cogently summarized substantive provisions of the Code that fundamentally impact contract rights as follows:

> The Bankruptcy Code substantively alters the rights and remedies of both debtors and creditors in a most fundamental way. For example, section 502 disallows certain claims which would be enforceable under non-bankruptcy laws. Under section 502(b), claims for unmatured interest are not allowed (except as provided

18

in section 506), a landlord's claim under section 502(b)(6) for breach of a lease is limited in a manner inconsistent with the law of may states, and some claims are simply disallowed. See § 502(b)-(j). . .

*In re Pease*, 195 B.R. 431, 434 (Bankr. D. Neb. 1996). Further still, the Ninth Circuit Court of Appeals stated that "[e]quity may not be invoked to defeat clear statutory language, nor to reach results inconsistent with the statutory scheme established by the Code. " *Committee of Creditors Holding Unsecured Claims v. Koch Oil Co.*, (*In re Powering Oil Co.* ), 59 F.3d 969, 973 (9th Cir. 1995). But, this appears to be exactly what the District Court did in this case. In its Order, the District Court simply overlooked or ignored all of the above cited cases, stating:

Moreover, nothing in the deed of trust suggests that a bankruptcy discharge could automatically accelerate this debt and paragraph 22 of that document contains detailed requirements for triggering acceleration, including a notice that does not appear to have been provided in conjunction with the bankruptcy discharge here. To find that a bankruptcy discharge automatically accelerates a discharged debt would be an unwarranted exception to the Supreme Court of Nevada's recognition in *Clayton v. Gardner* that "courts usually require that an acceleration be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lenders intention." So I do not find the original borrowers' bankruptcy discharged accelerated the debt and rendered it "wholly due," triggering NRS 106.240's ten-year clock.

(1-ER-0006-7)

CITI has also argued that only the bank can accelerate the debt in accordance with the terms of the Deed of Trust because NRS § 106.240 uses the phase "according to the terms thereof". However, the Deed of Trust and Note, specifically state "[t]his Security Instrument shall be governed by federal law." (2 ER 0038-0053, Deed of Trust at, page 10, paragraph 16). Bankruptcy law states that the debt is accelerated to the extent that all of the principal is now immediately due and owing. *In re Manville, supra.*

With further respect to the application of the bankruptcy code to debts that have maturity dates in the distant future, Senate Report No. 95-989 to 11 U.S.C. § 502 specifically address the issue as follows:

> All such contingent or unmatured claims are to be liquidated by the bankruptcy court in order to afford the debtor complete bankruptcy relief; these claims are generally not provable under present law. Paragraph (2) requires disallowance to the extent that the claims is for unmatured interest as of the date of the petition. Whether interest is matured or unmatured on the date of bankruptcy is to be determined **without reference to any ipso facto or bankruptcy clause in the agreement creating the claim**. Interest disallowed under this paragraph includes postpetition interest that is not yet due and payable, and any portion of prepaid interest that represents an original discounting of the claim, yet that would not have been earned on the date of bankruptcy. For example, a claim on a $1,000 note issued the day before bankruptcy would only be allowed to the extent of the cash actually advanced. If the original discount was 10 percent so that the cash advance was only $900,

then notwithstanding the fact amount of the note, only $900 would be allowed. If $900 was advance under the note some time before bankruptcy, the interest component of the note would have to be prorated and disallowed to the extent it was for interest after the commencement of the case.

**Section 502(b) thus contains two principles of present law. First, interest stops accruing at the date of the filing of the petition, because any claim for unmatured interest is disallowed under this paragraph. Second, bankruptcy operates as the acceleration of the principal amount of all claims against the debtor.**

(Senate Report 95-989, emphasis added). Thus, the question remaining is whether acceleration or advanced maturity of the debt under 11. U.S.C. § 502 is the same thing as "wholly due" under NRS § 106.240. While there is no specific Nevada case addressing the effect of a bankruptcy discharge on a Deed of Trust in relation to NRS § 106.240's termination of such an encumbrance ten-years after the debt secured thereby is deemed "wholly due" - the Nevada Supreme Court has recently stated in *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 138 Nev. Adv. Op. 22 (April 22, 2022), "[t]his Opinion assumes that acceleration makes the loan "wholly due." *Id*. n.2, and the Nevada Supreme Court has used the term "maturity" in the same manner as "wholly due" when discussing the language contained in NRS §106.240. See *Lakes v. U.S. Bank Trust*, 137 Nev. Adv. Rep. 85 (2021). Thus, it is highly probable that

the Nevada Supreme Court, when presented with the issue, will conclude that a bankruptcy discharge has the effect of declaring the debt "wholly due" for purposes of NRS § 106.240.

**B**.   **Discharge in Bankruptcy Results in the Debt Becoming "Wholly Due":**

This Court has determined that the discharge of a debt in bankruptcy, contained in an installment contract, has the effect of making the entire debt immediately due, regardless of whether the creditor has itself accelerated the debt.  In *Jarvis v. Federal National Mortgage Association*, Case No. 17-35428 (June 14, 2018) (Unpublished), this Court addressed the effect that a bankruptcy discharge has on a debt that has not been reaffirmed by the debtors, even if the debt is owned by Fannie Mae or Freddie Mac. This Court addressed the effect of bankruptcy discharge on a Deed of Trust:

> The Jarvises never reaffirmed or made any further payments on the note after their bankruptcy, and neither Fannie Mae nor any prior holder of the deed of trust ever accelerated the debt or initiated foreclosure proceedings.  The statute of limitations to foreclose on the deed of trust ran from the last installment due before the Jarvises' bankruptcy discharge in February 2009 and expired before the Jarvises brought this quiet title action nearly seven years later in February 2016.  Summary judgment in favor of the Jarvises on their quiet-title claim was therefore appropriate.

This Court  affirmed judgment from the Federal District Court that had ruled that the bankruptcy discharge has the effect of making the discharge date the actual maturity

date of the debt.  This is because the debt is discharged and no further payments can be deemed to be due.  The District Court, relying on two previous decisions from the Washington appellate courts, stated:

> The Court agrees with *Silvers*' and *Edmundson's* holdings.  The discharge of a borrower's personal liability on his loan – the cessation of his installment obligations – is the analog to a note's maturation.  In both cases, no more payments could become due that could trigger RCW 4.16.040's limitations period.  The last-owed payment before the discharge of a borrower's personal liability on a loan is the date from which a secured creditor has six years to enforce a deed of trust securing the loan.

Thus, although NRS § 106.240 is a statute of repose, the Berwick bankruptcy discharge has the same effect because the debt was fully matured/wholly due on the date of the last payment due from Berwick on the debt, but in every circumstance no later than July 6, 2010, well over ten years ago,  As such, the Deed of Trust has been terminated as of July 6, 2020, was unenforceable at the time of the foreclosure sale, and any foreclosure thereunder is void *ab initio*.

In the Nevada District Court, CITI argued that the District Court should ignore this Court's decision in *Jarvis v. Federal National Mortgage Association*, Case No. 17-35428 (June 14, 2018) (Unpublished), because the Washington State Supreme Court has since rejected this Court's application of Federal Bankruptcy law to Washington State's six-year statute of limitations and explained that its prior ruling

in *Edmundson* was only addressing the statute of limitations as it related to each installment payment. In its Order, the District Court agreed with CITI, stating:

> Twinrock alleges that the original borrowers' bankruptcy proceedings altered the maturity date of the mortgage because their bankruptcy dischard on July 6, 2010, caused the debt to be "deemed matured." It grounds this theory in authority interpreting Washington's statute of limitations for foreclosure actions. That Washington statute is materially distinguishable from NRS 106.240 in both language and effect. And although a Ninth Circuit panel concluded in an unpublished disposition in *Jarvis v. Federal National Mortgage Association* that a bankruptcy discharge triggers Washington's statute of limitations for judicial-foreclosure actions, the Court of Appeals of Washington in *Copper Creek Homeowners Association v. Kurtz* recently denounced that interpretation as "erroneous" and one "arrived at . . . through misinterpretation" of Washington state precedent. It explained that "[s]uch a rule would attribute to a bankruptcy discharge of the debtor more than relief from personal liability. It would mean the option of the lender to accelerate or not to accelerate the maturity date of the note was eliminated. "Such a rule only exists in the inferences drawn and stated in the federal decisions[,]" the Copper Creek court noted, which "do not rely on any provision in the bankruptcy code as requiring such a result. We find no bankruptcy provision that would do so." I heed the Washington court's warning that Jarvis is dubious authority, so I decline to apply it.

(1-ER-0005-6)

The District Court recognized that there are differences between Washington's statute of limitations for judicial foreclosure actions and NRS § 106.240, but failed

to give those differences a proper analysis in this case. Nevada does not have a statute of limitations, per se, regarding non-judicial foreclosures. Instead, Nevada has the subject ancient lien statute, which is a statute of repose that sets an absolute deadline. This deadline is not based on any injury or discovery of a cause of action. NRS § 106.240 dictates that Deed of Trust is deemed terminated, by law, ten years after the debt became wholly due or matured. Thus, CITI's right to take any action was terminated along with the Deed of Trust.

In this instance, the District Court adopted the Washington Court's faulty reasoning. It declined to apply *Jarvis* because the Washington Court did not believe that the bankruptcy code provides for the acceleration of the debt secured by a Deed of Trust. Yet, as shown *In re Manville Forest Prods. Corp.*, 43 B.R. 293, 297-298 (Bankr. S.D.N.Y. 1984), aff'd in part, rev'd in part, 60 B.R. 403 (S.D.N.Y. 1986); *In re Skyler Ridge*, 80 B.R. 500; 1987 Bankr. LEXIS 1935 (Dec. 1987); *In re Pease*, 195 B.R. 431, 434 (Bankr. D. Neb. 1996); *HSBC Bank USA v. Calpine Corporation*, 2010 U.S. Dist. LEXIS 96792; 2010 WL 3835299 (Sept. 15, 2010); and *Committee of Creditors Holding Unsecured Claims v. Koch Oil Co.*, (*In re Powering Oil Co.* ), 59 F.3d 969, 973 (9th Cir. 1995) *supra,* that is exactly what happens in a bankruptcy. The bankruptcy automatically accelerates the entirety of the debt and it is discharged.

Again, this was specifically stated by the drafters of the Bankruptcy Code, the United

States Senate, in Senate Report No. 95-989:

> Section 502(b) thus contains two principles of present law. First, interest stops accruing at the date of the filing of the petition, because any claim for unmatured interest is disallowed under this paragraph. Second, **bankruptcy operates as the acceleration of the principal amount of all claims against the debtor**.

(Senate Report 95-989, emphasis added).

The pertinent aspect of *Jarvis,* for purposes of the instant case, has nothing to

do with when the statute of limitations accrues on an installment contract under the

law of the State of Washington. What is key, and what *does* matter here, is the this

Courts' analyses and adoption of the rule pertaining to the *effect of a bankruptcy*

*discharge on a debt becoming wholly due*. Future payments are no longer due. This

is akin to maturity. Therefore, the Note has matured. It will not mature some day in

the future. It has already matured and was wholly due on July 6, 2010.

In Colorado, the Court of Appeals also considered the *Edmundson* and *Jarvis*

decisions and determined that a discharge in bankruptcy makes the debt matured upon

said discharge because no further payments could be due. In *Silvernagel v. U.S. Bank*

*Nat'l Ass'n*, Case No. 20CA1035 (October 21, 2021), U.S. Bank, like CITI here,

argued that because it did not *itself* accelerate repayment of the debt, it could not have become matured.   The Colorado Court of Appeals disagreed:

> Because it did not accelerate repayment of the debt, US. Bank argues that a new cause of action accrues upon Silvernagel's default on each monthly installment until the maturity date of the loan, i.e., October 1, 2036.[8]   Consequently, the statute of limitations has not accrued, much less expired, with respect to parts of the debt.

> US Bank's argument, however, overlooks the effect of Silvernagel's October 2012 discharge in bankruptcy.

> In *Edmundson*, 378 P.3d 272, the Washington Court of Appeals addressed the effect of a discharge in bankruptcy on the operation of a statute of limitations.   Like Colorado, in Washington "when recovery is sought on an obligation payable by installments, the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it." *Id*. at 277 (quoting *Herzog v. Herzog*, 22 Wn.2d 382, 161 P.2d 142, 144-45 (Wash. 1945).   The *Edmundson* court concluded that "the statute of limitations for each missed monthly payment accrued" on the date it was due "until the [parties] no longer had personal liability [for making payments] under the note.   They no longer had such liability as of the date of their bankruptcy discharge." *Id*. at 278.

> Applying *Edmundson*, the federal district court for the Western District of Washington reached the same conclusion in *Jarvis v. Federal National Mortgage Ass'n* on facts similar to the ones here. (citation omitted).   There, a bankruptcy court discharged the homeowner's personal obligation on the Note. 2017 U.S. Dist. LEXIS 62102, at *1.   More than six years after the discharge, the lender commenced a trustee sale, asserting that the discharge did

---

[8]CITI has made a nearly identical argument in this case.

27

not affect its ability to take in rem action against the property. *Id.* Rejecting that argument, the court concluded:

> The last payment owed commences the final six-year period to enforce a deed of trust securing a loan. This situation occurs when the final payment becomes due, such as when the note matures or a lender unequivocally accelerates the note's maturation. It also occurs at the payment owed immediately prior to the discharge of a borrower's personal liability in bankruptcy, because after discharge, a borrower no longer has forthcoming installments that he must pay.
>
> * * *
>
> The discharge [in bankruptcy] of a borrower's personal liability on his loan – cessation of his installment obligations – is the analog to a note's maturation. In both cases, no more payments could become due that could trigger . . . [a] limitations period.

2017 U.S. dist. LEXIS 62102, [WL] at *2-3 (citations omitted in original); *see Jarvis*, 726 F.App'x at 667 ("The final six-year period to foreclose runs from the time the final installment becomes due. This may occur upon the last installment due before discharge of the borrower's personal liability on the associated note").

**We are persuaded by, and consequently adopt, the reasoning in *Jarvis*. As the federal district court in *Jarvis* said, "[t]he discharge of a borrower's personal liability on a note . . . alert[s] the lender that the limitations period to foreclose on a property held as a security has commenced**. 2017 U.S. Dis. LEXIS 62102, 2017 WL 1438040, at *2.

According to the allegations in the complaint, (1) Silvernagel was discharged in bankruptcy of personal responsibility for the underlying debt in October 2012; and (2) as of June 2019, US Bank had not initiated foreclosure proceedings with respect to the

deed of trust.  If true, US. Bank would have failed to timely seek relief within the applicable six-year limitations period and, consequently, would be barred from foreclosing on Silvernagel's property.  Silvernagel would, then be entitled to the relief sought in their complaint.

(2021 Colo. App, LEXIS 1441 at 11-14, Emphasis added).  Here, there is little difference in the facts, except that in this case the borrowers were discharged in bankruptcy on July 6, 2010, which means that under NRS § 106.240, which is a statute of repose, the Deed of Trust and CITI's ability to enforce it were terminated not later than July 6, 2020, ten years after the last possible payment became "wholly due" pursuant to 11 U.S.C. § 502(b).  Thus, whether it's a statute of limitations or a statute of repose that is at issue the outcome is the same.

When no further payments are due, and cannot be expected, it is the same as maturity.  To think otherwise is to ignore the operation of law upon the terms of contract and the inclusion of then-existing law at its formation.  It thus serves no purpose and is illogical to consider a date, 30 years from the date of the original note, as the maturity date, once the debt has been discharged in bankruptcy.  No lender can reasonably anticipate any further payments the following month, much less decades in the future.  That original date serves absolutely no purpose whatsoever.  The debt will not become due on said date.  To buy the argument set forth by CITI in the district court is to entertain a fallacy and subvert the very purpose of bankruptcy law

and the ancient lien statute, by extending the statute of repose beyond ten years after the last payment was due to some now fictional date many years later. This would needlessly encumber property and allow the banks dead-hand control of a property and its alienability via a debt that no longer exists and has not existed for over twelve years.

Whether referred to the debt as being "wholly due" per *Jarvis*, or "accelerated' per *In re Manville* and 11. U.S.C. § 502(b), the filing of a bankruptcy petition or the discharge of the debtor has the same result. The entire debt is deemed due and no further payments are required. The Deed of Trust is terminated ten years later as a matter of law by operation of NRS § 106.240.

Berwick entered into a 30 year debt. Berwick filed bankruptcy. The debt was fully and wholly accelerated. More than 10 years has passed since that acceleration. CITI's attempt to decelerate is irrelevant. It cannot overrule federal law. The Deed of Trust and Note are subject to and not above federal law. The Note accelerated on July 6, 2010 and became wholly due. The 10-year statute of repose under NRS § 106.240 terminated the Deed of Trust and sale thereunder is void.

///

///

///

**C.** **By Proceeding with the Foreclosure Sale and Collecting Interest in Violation of 11. U.S.C. 502(b) CITI was Unjustly Enriched to the Damage of Twinrock:**

In its Amended Complaint, which is the subject of the order upon which this appeal is taken, Twinrock asserted the following as its Sixth Cause of Action:

93.    . . . If Plaintiff is unsuccessful in obtaining title to the Property, it is then entitled to the relief sought in this cause of action.

94.    Berwick filed a Chapter 7 Petition for Bankruptcy on March 27, 2020.  At the time of filing the petition the amount owed under CITI's Deed of Trust was claimed to be $173,246.00.  CITI did not file a proof of claim or otherwise challenge the amount owed under the Deed of Trust as of March 27, 2010.

95.    On July 6, 2010, the bankruptcy court entered an Order Discharging the entire debt of $173.246, as against Berwick.

96.    Berwick neither reaffirmed the debt secured by the deed of trust, nor did they make any further payments.

97.    Under the bankruptcy code, the debt secured by CITI's deed of trust was fully matured upon the filing of the Petition by Berwick.  Pursuant to 11 U.S.C. § 502(b)(2) all unmatured interest no longer exists and is not allowed.  Thus, the total amount of the debt under the Deed of Trust was cemented at $176.246.00.

98.    On March 4, 2022, NATIONAL, on behalf of CITI, sold the Property to BRECKENRIDGE at a foreclosure sale for the amount

of $369,000.00. A Trustee's Deed Upon Sale was recorded against the property as Instrument No. 20220316:0000006.

99.     Because the sale proceeds of $369,000.00 exceeded the allowable amount of the claim of $176,246.00, the sale resulted in excess proceeds of $192,754.00. These excess proceeds represent the equity in the Property that rightfully belongs to Plaintiff as the title owner of the Property that was sold.

100.     CITI has retained the excess proceeds from the sale, which belong to Plaintiff pursuant to NRS § 40.462(2)(d).

(4-ER-0411). By dismissing the Amended Complaint, the district court completely ignored the application of the bankruptcy code with respect to the collection of post-petition interest and has allowed CITI to retain the balance of proceeds rightfully belonging to Twinrock, if Twinrock's interest has been extinguished. Again, Senate Report 95-989 addresses the bar against collecting post-petition interest:

> **Interest disallowed under this paragraph includes postpetition interest that is not yet due and payable**, and any portion of prepaid interest that represents an original discounting of the claim, yet that would not have been earned on the date of bankruptcy. . .
>         \*   \*   \*
> Section 502(b) thus contains two principles of present law. **First, interest stops accruing at the date of the filing of the petition, because any claim for unmatured interest is disallowed under this paragraph**. Second, bankruptcy operates as the acceleration of the principal amount of all claims against the debtor.

(Senate Report 95-989, emphasis added)

In its order, the district court denied this claim outright, based on an erroneous connection to Twin Rock's NRS § 106.240 ten year termination argument:

> In sum, Twinrock cannot state a plausible claim for relief based on 106.240 theories. So I dismiss its fourth through seventh claims for relie (sic) without leave to amend.

(1-ER-0010). However, Twinrock's Sixth Claim for Relief would survive even if Twinrock lost its interest in the property. As the title owner, excess proceeds from the sale should be distributed to Twinrock. The district court was wrong to dismiss these alternative claims. As noted in the Amended Complaint and in the factual background above, at the time of filing the petition the amount owed under CITI's Deed of Trust was claimed to be $173,246.00. At the foreclosure sale, CITI sold Twinrock's property for $369,000.00. Under 11 U.S.C. § 502(b) the accrual of interest post-petition is not allowed. Thus, any excess proceeds are required to be distributed to Twinrock pursuant to NRS § 40.462(2)(d).

**D.    Twin Rock Is A Bona Fide Purchaser:**

Twin Rock is a Good Faith Purchaser, having purchased a property that was not subject to CITI's Deed of Trust. It is undisputed that at the time Twinrock purchased the property, November 15, 2018, the State Court had entered a Judgment in Case No. A-13-675910-C, expressly stating:

> THEREFORE, PURSUANT TO THE ABOVE FINDINGS OF
> FACT AND CONCLUSIONS OF LAW, IT IS HEREBY
> ORDERED, ADJUDGE AND DECREED that the Deed of Trust
> and any assignments thereof, as liens on the Subject Property are
> hereby cancelled and without legal force or effect, and do not
> convey any right, title or interest in and to the Subject Property to
> Citi and/or its predecessors in interest and/or its assignees.
>
> IT IS FURTHER HEREBY ORDERED, ADJUDGE AND
> DECREED that Citi and/or its predecessors in interest and/or
> assignees do not have nay estate, right, title, lien or interest in or to
> the Subject Property or any part of the Subject Property.

(3-ER-0284-91). As noted above, this Order was recorded in the office of the Clark

County Recorder as Instrument No. 20181106:0002793. The previous recording of

a lis pendens or an appeal of the above order/judgment to the Nevada Supreme Court

in no way invalidated or effected the Judgment. To protect its interest, CITI was

required to request a stay of the order/judgment and post a supercedes bond. CITI

chose not to supercede the order/judgment of September 24, 2018 pending its appeal

to the Nevada Supreme Court, Twinrock, therefore, purchased the Subject Property

free and clear of CITI's Deed of Trust that was not in effect at the time of purchase.

The Nevada Supreme Court has addressed instances like this, where the party

appealing a district court judgment involving real property chose not to supercede

same pending the appeal, i.e. seeking a stay of the order/judgment pending appeal.

The Nevada Supreme Court in the case of *Cox v. Eighth Judicial District Court*, 124,

Nev. Adv. Op. 78 (October 2, 2008), cited to a variety of cases from other

jurisdictions confirming the finality of sales of real property based on a judgment effecting real property that was later reversed. One of the cases cited was *Estate of Spahi v. Hughes-Northwest, Inc.*, 107 Wn. App. 763 (Wash. Ct. App. 2001), wherein the Washington Court of Appeals discussed how a party appealing a judgment effecting real property must be proactive by seeking a stay of the judgment pending the appeal wherein failure to do so will be fatal to his claim against a subsequent purchaser pending the appeal.

The Nevada Supreme Court also addressed the issue of bona fide purchasers in *Shadow Wood Homeowner's Association, Inc. v. New York Community Bancorp, Inc.*, 366 P.3d 1105 (Nev. 2016), wherein a third-party, Gogo Way was deemed to be a bona fide purchaser for value even though there was a controversy between the lender and the HOA. The Nevada Supreme Court stated:

> A subsequent purchaser is bona fide under common-law principles if it takes the property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry." *Bailey v. Butner*, 64 Nev. 1, 19, 9176 P.2d 226, 234 (1947) (emphasis omitted); *see also Moore v. De Bernardi*, 47 Nev. 33, 54, 220 P. 544, 547 (1923), ("the decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founder either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive."). Although, as mentioned,

NYCB might believe that Gogo Way paid "valuable consideration" cannot be contested. *Fair v. Howard*, 6 Nev. 304, 308 (1871) ("The question is not whether the consideration is adequate, but whether it is valuable."); *see also* <u>Poole v. Watts</u>, 139 Wash.App. 1018, 2007 WL 1733130 (2007) (unpublished disposition) (stating that the fact that the foreclosure sale purchaser purchased the property for a "low price" did not in itself put the purchase on notice that anything was amiss with the sale).

As to notice, NYCB submits that "the simple fact that the HOA trustee is attempting to sell the property, and divest the title owner of its interest, is enough to impart constructive notice onto the purchaser that there may be an adverse claim to title." Essentially, then, NYCB would have this court hold that a purchaser at a foreclosure sale can never be bona fide because there is always the possibility that the former owner will challenge the sale post hoc. The law does not support this contention.

When a trustee forecloses on and sells a property pursuant to a power of sale granted in a deed of trust, it terminates the owner's legal interest in the property. <u>Charmicor, Inc. v. Bradshaw Fin. Co.</u>, 92 Nev. 310, 313, 550 P.2d 413, 415 (1976). This principle equally applies in the HOA foreclosure context because NRS Chapter 116 grants association the authority to foreclose on their liens by selling property and thus divest the owner of title . . . So, when an association's foreclosure sale complies with the statutory foreclosure rules, as evidence by the recorded notices, such as it is the case here, and without notice of any facts to indicate the contrary, the purchaser would have only "notice" that the former owner had the ability to raise an equitably based post-sale challenge, the basis of which is unknown to that purchaser.

That NYCB retained the ability to bring an equitable claim to challenge Shadow Wood's foreclosure sale is not enough in itself to demonstrate that Gogo Way took the property with notice of any potential future dispute.

(366 P.3d at 1115-16) (emphasis added)

In this case, the question is not whether Twinrock was aware of CITI's prior claims. Rather, the recorded documents reflected that CITI's claims had been adjudicated and it was determined that the prior HOA sale was valid and the Deed of Trust no longer attached to the Property. It was absolutely fatal for CITI to fail to seek a stay of the district court's order/judgment of September 24, 2018 pending appeal. The subsequent judgment, issued two years later, was only to Premier One Holdings and had no effect whatsoever on Twinrock having purchased the subject property on November 15, 2018, at a time when all recorded documents reflected that the property was free and clear of CITI's Deed of Trust.

## VI.   CONCLUSION

The Deed of Trust was terminated by law and the subsequent foreclosure thereon by CITI was wrongful. TWINROCK  has, and will continue to suffer irreparable harm if the foreclosure sale is not declared invalid and void.

Based on all the foregoing, TWINROCK HOLDINGS, LLC respectfully requests that this Court reverse the District Court's decision and remand the case for further action in accordance with the arguments presented herein.

**STATEMENT OF RELATED CASES**

Twinrock is not aware of any other cases presently pending before the 9th Circuit Court of Appeals on the issues presented.

DATED this 17th day of May, 2023.

Respectfully submitted by:
**THE WRIGHT LAW GROUP, P.C.**

/s/ *John H. Wright, Esq.*
JOHN HENRY WRIGHT, ESQ.
Nevada Bar No. 6182
2340 Paseo Del Prado, Suite D-305
Las Vegas, Nevada 89102

*Attorney for Appellant*
*TWINROCK HOLDINGS, LLC*

# CERTIFICATE OF COMPLIANCE

I certify that this appellate brief complies with the type-volume limitations as set forth in Rule 32 of the Federal Rules of Appellate Procedure. The brief has been prepared using Times New Roman, 14-point font, and contains a total of 9,340 words proportionally spaced.

DATED this 17th day of May, 2023.

Respectfully submitted by:
**THE WRIGHT LAW GROUP, P.C.**

/s/ *John H. Wright, Esq.*
JOHN HENRY WRIGHT, ESQ.
Nevada Bar No. 6182
2340 Paseo Del Prado, Suite D-305
Las Vegas, Nevada   89102

*Attorney for Appellant*
*TWINROCK HOLDINGS, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned does hereby certify that on this 17th day of May, 2023, pursuant to FRAP Rule 25, a true and correct copy of the foregoing **APPELLANT'S OPENING BRIEF** was duly served via this Court's electronic filing system upon the following:

**WOLFE &WYMAN LLP**
David T. Blake, Esq.                         dtblake@ww.law

*Attorneys for Defendant Citimortgage, Inc.*

**TIFFANY & BOSCO, P.A.**
Krista J, Nielson, Esq.                      knielson@tblaw.com

*Attorneys for Defendant National Default Servicing Corporation*

**WEDGEWOOD, LLC**
Casey J. Nelson, Esq.                        caseynelson@wedgewood-inc.com
Brandon Trout, Esq.                          btrout@wedgewood-inc.com


*Attorneys for Defendant Breckenridge Property Fund 2016, LLC*


          /s/ *Candi Ashdown*
          An Employee of **The Wright Law Group, P.C.**